**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY**

**UNITED STATES OF AMERICA**

v.                                                    CRIMINAL NO. 5:09-00065

**THOMAS BROWNING**

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States offers this Sentencing Memorandum outlining its position regarding the pre-sentence investigation report ("PSR") and sentencing for Defendant Thomas Browning.

**I.   REQUEST FOR CONSOLIDATED SENTENCING HEARING**

The Government notes the "Motion Requesting A Single Joint Consolidated Sentencing Hearing For All Defendants as to Thomas Browning, Landon Cline, Ricky Nichols" filed by Defendant Landon Cline.  See Docket No. 96.  The Government joins in Defendant Cline's motion and requests the Court to hold a joint sentencing hearing for all three defendants.  If the Court would prefer that the Government file a separate response to Defendant Cline's motion, the Government will do so.

**II.  OFFENSE AND RELEVANT CONDUCT**

This case arises out of the August 28, 2005 derailment of a Norfolk Southern Railroad Company ("Norfolk Southern") train south of Baileysville, Wyoming County, West Virginia.  As set forth in

-1-

the Information, Defendant Browning pled guilty to a violation of 18 U.S.C. §371, arising out of a conspiracy to steal copper wire belonging to Norfolk Southern that was used as part of its railway communication system.  The underlying charge for the 371 conspiracy violation is the state crime for theft of railroad property, a violation of W. Va. Code §61-3-28(b)(4), which may be charged as a federal crime under the Assimilated Crimes Act, 18 U.S.C. §13, because the copper wire to be stolen was located on federal property, that is, R.D. Bailey Lake in Wyoming County.[1]

As noted in the PSR and the Plea Agreement, the United States and Defendant Browning appear to be in substantial agreement

---

[1] Defendants Browning, Cline and Nichols had been initially indicted on March 18, 2009 for violations of 18 U.S.C. § 1992, the Federal Train Wreck Act.  As trial approached and plea negotiations began, Mr. Lefler, Browning's counsel, noted a potential *ex posto facto* defect in the Indictment.  That is, the Indictment included statutory language that had been enacted on March 9, 2006, six months after the August 28, 2005 train derailment.

The conduct set forth in Count One of the original Indictment, the substantive train derailment charge under 18 U.S.C. §1992(a)(1), was still chargeable under the previous statutory language.  See e.g., United States v. Alcorn, 329 F.3d 759 (10th Cir. 2003).  However, the conduct charged in Count Two, conspiracy to damage property used in a railroad communication system under 18 U.S.C. §1992(a)(5), was not a federal crime at the time of the offense.  See 18 U.S.C. 1992, amended by Pub. L. 109-177, Title I, § 110(a), Mar. 9, 2006, 120 Stat. 208.  The same conduct, however, was chargeable under the Assimilated Crimes Act because the copper wire theft occurred on R.D. Bailey Lake, which is owned by the Army Corps of Engineers.

In lieu of having the Government supersede the Indictment and proceeding to trial, each of the Defendants opted to plead to the Information charging them with a conspiracy violation under the Assimilated Crimes Act, as noted above.

regarding the facts comprising the offense of conviction.  Further, although there may be factual inconsistencies among the Defendants on the respective roles in the train derailment itself, Defendant nonetheless does agree that the conduct associated with the train derailment is equally attributable to him as relevant conduct.

### III.   **CRIMINAL HISTORY**

The United States agrees with the PSR that the Defendant has a Criminal History Category Level IV.

### IV.   **GUIDELINE CALCULATION**

The United States and Defendant agree with the PSR that the advisory guideline range should be 20, before acceptance of responsibility.

### V.   **ACCEPTANCE OF RESPONSIBILITY**

The PSR concludes that Defendant Browning is not entitled to a reduction for acceptance of responsibility pursuant to USSG §3E1.1, but defers the final decision to the discretion of the Court.  See PSR, Response To Objections.  As set forth in Application Note 1(a), the Court should consider, among other things, whether the defendant truthfully admitted the conduct comprising the offense of conviction, and truthfully admitted or not falsely deny any additional relevant conduct for which the defendant is accountable under §1B1.3.  The determination of acceptance of responsibility rests soundly with this Court.  See Elliott v. U.S., 332 F.3d 753, 761 (4th Cir. 2003) ("We are mindful

that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility,' and thus that 'the determination of the sentencing judge is entitled to great deference on review.'") (quoting USSG §3E1.1, Application Note 5).

Here, Defendant Browning admits to the facts supporting the offense of conviction. That is, he admits that he actively participated in, and intended to benefit from, a conspiracy to steal copper wire from Norfolk Southern situated on federal property.

As it relates to the relevant conduct, Defendant Browning readily admits that he was present at the derailment site with Defendant Nichols. He further admits that the train tracks were blocked by I-Beams, however, he has refused to provide any more information as to what transpired that evening. As set forth in the PSR, the USPO determined that Defendant Browning is not entitled to the advisory guideline reduction because of contradictions between his account and the accounts of the other defendants. See PSR, ¶¶ 111 and 112. The Government appreciates the PSR conclusion, but disagrees with it for the following reasons.

First, as set forth in the PSR and his Plea Agreement, Defendant has accepted all the advisory guideline enhancements for the loss associated with the derailment as relevant conduct. Specifically, Defendant agreed to a twelve-point enhancement under

USSG §2B1.1(b)(1)(G).  Further, Defendant agreed to a two-point enhancement under USSG §2B1.1 (b)(13)(A) because the derailment involved the reckless risk of death or serious bodily injury to others.[2]  In other words, regardless of the inconsistencies among the factual accounts, Defendant has nonetheless agreed to a sentence as if he was wholly responsible for the train derailment as part of the underlying copper theft conspiracy.

Second, the Defendant timely notified the Government of his intentions to plead, thus saving the time and cost associated with preparing for trial.  The Government would note, however, that Defendant Browning was the last person to plead and, in the Government's view, only agreed to the plea agreement after it became clear that Defendant Nichols was going to testify against him.

Third, the Defendant entered into a written plea agreement, which was advantageous to the Government because it assists in avoiding the costs of a potential appeal in certain circumstances.

Based on the foregoing, the United States believes that Defendant Browning is entitled to a two-point decrease for acceptance of responsibility and further advises the Court that Government intends to move for the "third point" under USSG §3E1.1(b) if the Court finds that Defendant is eligible for

---

[2]   Defendant Browning did not include his agreement for the (b)(13)(A) enhancement in the Plea Agreement, but has since agreed to its application as reflected by his lack of objection.

acceptance of responsibility.  The Government recognizes that the argument for Defendant Browning receiving acceptance of responsibility is weak considering his steadfast refusal to discuss what occurred at the train derailment site.  Nonetheless, the factors set forth above favor the guideline applicaiton.

**VI.  18 U.S.C. § 3553(a) FACTORS**

The factors in Title 18, United States Code, Section 3553(a) counsel for a sentence that is no less than that which is provided for by the United States Sentencing Guidelines in effect at the time of Defendant Browning's conduct.  That is, the United States believes that a sentence with an advisory guideline range of 37 to 46 months based on an offense level of 17 is appropriate.

**A. 18 U.S.C. § 3553(a)(1)**: The PSR succinctly describes the nature and circumstances of the offense and the relevant conduct.  As it relates to Defendant Browning, the United States would note that Defendant Browning was the last defendant to plead. He has refused to divulge the specifics of what transpired at the derailment site, but does admit that he is responsible for the offense conduct and relevant conduct.  Browning has a significant criminal history, which includes acts of violence, and has shown little, if any, effort to become a productive member of society.

**B. 18 U.S.C. § 3553(a)(2)(A through D)**:   The United States argues that a sentence within the advisory guideline range is appropriate to reflect the seriousness of the offense, provide

adequate deterrence, protect the public from further crimes by defendant, and other correctional treatment in the most effective manner.

**C.  18 U.S.C. § 3553(a)(3):** Defendant faces a statutory maximum sentence of five years.  The United States argues that a sentence that is no less than that which is provided for by the United States Sentencing Guidelines in effect at the time of Defendant's conduct is appropriate and would satisfy statutory sentencing requirements.

**D. 18 U.S.C. § 3553(a)(4):**  The United States again argues that a sentence that is no less than that which is provided for by the United States Sentencing Guidelines in effect at the time of Defendant's conduct is appropriate in this case.

**E.  18 U.S.C. § 3553(a)(5):**  The United States argues that a sentence that is no less than that which is provided for by the United States Sentencing Guidelines in effect at the time of Defendant's conduct would necessarily comply with the applicable guideline policy statements.

**F.  18 U.S.C. § 3553(a)(6):**  The United States argues that a sentence that is no less than that which is provided for by the United States Sentencing Guidelines in effect at the time of Defendant's conduct would avoid sentencing disparities with similarly situated defendants.  In this particular case, the United States believes that the Court could avoid sentencing disparity by

sentencing each of the Defendant's to a sentence within their respective guideline range.

   **G.**  **18 U.S.C. § 3553(a)(7):** As set forth in Paragraph 181 of the Plea Agreement, Defendant agreed to be joint and severally liable for restitution of $398,071.00, which represents the cost incurred by Norfolk Southern as result of the Defendants' conduct. The Defendant's agreement to this sum saved the United States additional cost in proving loss amount.

 WHEREFORE, for the above-cited reasons, the United States argues that a sentence that is no less than that which is provided for by the United States Sentencing Guidelines in effect at the time of Defendant's conduct is appropriate in this case.

**VII.**  **SENTENCING HEARING AND WITNESSES**

 The Government intends to call three witness at sentencing, primarily to adequately convey to the Court the seriousness of the Defendants' conduct as it relates to stealing copper wire used in the railroad communication system as well as causing the train derailment. To that end, the Government intends to call Conductor J.R. Hunter and Engineer R.L. Ward, who were the two Norfolk Southern employees aboard the train when it derailed. Hunter and Ward will narrate a "railcam" video that recorded the events from the front of the train on August 28, 2005, including the derailment itself. Further, the Government will play audio recordings of Conductor Hunter's calls to the Bluefield Dispatch Center

immediately following the derailment.

Finally, the Government will call Norfolk Southern Special Agent David Farley to explain the results of his investigation that determined the cause of the derailment. In particular, Norfolk Southern has maintained the two I-Beams that were used to block the track. The Government proposes to show the Court the actual beams at the sentencing hearing and have SA Farley explain how the beams were used to derail the train. The weight, size and magnitude of the I-Beams will show the Court the true nature of the serious risk of death and bodily injury that could have been caused by the Defendants' conduct, which should be taken into account for the purposes of sentencing.

If the Court is so inclined to view the I-Beams, the Government will make appropriate arrangements for them to be made available for viewing in the loading dock area of the Beckley Courthouse. After hearing evidence from the Messers Hunter and Ward, the Court could then briefly adjourn and reconvene in the loading dock area to view the I-Beams, where SA Farley could explain how the beams were placed on the track and how they caused the derailment. The Government will work with the Beckley Court Security to see if acceptable arrangements can be made and then contact the Court's chambers to determine whether the Court is interested in viewing the actual I-Beams as part of sentencing in this matter.

If the Court is inclined to consolidate the sentencing for all three Defendants and view the I-Beams, the Government estimates that the consolidated sentencing should take approximately two and a half to three hours.

Respectfully submitted,

CHARLES T. MILLER
United States Attorney

/s/ *Thomas C. Ryan*
THOMAS C. RYAN
Assistant United States Attorney
WV Bar No.  9883
United States Attorney's Office
300 Virginia Street East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: thomas.ryan@usdoj.gov

CERTIFICATE OF SERVICE

    I, Thomas Ryan, certify that the "SENTENCING MEMORANDUM OF THE UNITED STATES" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing on December 29, 2009 to:

>Derrick W. Lefler, Esq.
>dlef@citilink.net
>1345 Mercer Street
>Princeton, WV 24740

/s/ *Thomas C. Ryan*
THOMAS C. RYAN
Assistant United States Attorney
WV Bar No.  9883
United States Attorney's Office
300 Virginia Street East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: thomas.ryan@usdoj.gov